IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JACK LOWE and DENNIS REYNOLDS, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 1:13-CV-2425-AT |
| v. | : | |
| | : | |
| ATLAS LOGISTICS GROUP RETAIL SERVICES (Atlanta), LLC, | : | |
| | : | |
| Defendant. | : | |

# O R D E R

This matter is before the Court on Plaintiffs' Motion for Attorney's Fees ("Motion") [Doc. 142] in this employment discrimination case with a twist.  In 2012, Atlas requested that some of its employees, including Plaintiffs, submit to a cheek swab so that Atlas could use the resulting cheek cell DNA to detect which of its workers had been defecating in one of its warehouses.  Plaintiffs sued, alleging that Atlas's request had violated the Genetic Information Non-discrimination Act ("GINA"). On June 22, 2015, after a four-day trial, the jury returned a $2.25 million dollar verdict in favor of Plaintiffs.  This verdict was reduced to $600,000.00 on remittitur.

Plaintiffs seek a total of $600,597.04 in fees and litigation expenses, based on 1,672.57 hours of billable time. Atlas does not dispute that Plaintiffs prevailed in this litigation and are entitled to some award of fees.  It does, however,

challenge the amount of the requested attorney's fee award on a variety of grounds.

For the following reasons, the Court **GRANTS IN PART** Plaintiffs' Motion and awards Plaintiffs $515,135.89 in fees and expenses.

## I.     Standard

The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge after proper application of a lodestar fee analysis. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Natco, Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001) (on appeal, reviewing fee award for abuse of discretion and applying *Hensley* analysis); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).   The starting pointing for calculating a reasonable attorney's fee award is the determination of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."   *Hensley*, 461 U.S. at 433 (1983); *Norman v. Housing Auth.*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The product of this formula is the "lodestar."  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam).  However, the extent of a plaintiff's success may warrant an adjustment of the lodestar fee upward or downward based on the results obtained.  *Hensley*, 461 U.S. at 434-440; *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000).

Plaintiffs, as the party seeking an award of fees here, bear the burden of demonstrating the reasonableness of the attorney hours worked and the rates claimed. *Hensley*, 461 U.S. at 433; *Norman*, 836 F.2d at 1304. That burden includes

> supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Similarly, in opposing the Plaintiffs' fee application, Defendant has an obligation to make specific and "reasonably precise" objections and proof concerning hours it wants excluded from any award. *Yule v. Jones*, 766 F. Supp. 2d 1333, 1341 (N.D. Ga. 2010) (citing *Hensley*, 461 U.S. at 428).

There is no precise rule or formula the Court must follow in determining what is a reasonable fee award. The court may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-437; *see also Bivens v. Wrap It Up, Inc.*, 548 F.3d at 1350 ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."); *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous,

"the district court need not engage in an hour-by-hour analysis . . . [instead] it may [] reduce the [hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction.")   A Court may *not* both engage in an hour-by-hour analysis *and* impose an across-the-board cut.  *Wrap It Up, Inc.*, 548 F.3d at 1351 ("the district court is to apply either method, not both.")

In determining reasonable attorney hours and fees, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees."  *Norman*, 836 F.2d at 1303 (internal citations omitted).   And the Court must bear in mind "that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed . . . not the least time in which it might theoretically have been done."  *Id.* at 1306.

## II.    Analysis

Plaintiffs' fee request of $600,597.04 can be broken down into three main parts:

- First, Plaintiffs request $522,815.33 in attorney's fees for time actually billed.

- Second, Plaintiffs' request a $46,250.00 lodestar enhancement to compensate them for time spent researching GINA for which they did not bill.

- Third, Plaintiffs request $31,531,71 in litigation expenses under § 1988.

The Court first addresses and rejects Plaintiffs' request for a $46,250.00 lodestar enhancement.  The Court then assesses the reasonableness of Plaintiffs' request for $522,815.33 in fees.  The Court finally addresses the issue of litigation expenses.

### A.  Lodestar Enhancement

The Court rejects Plaintiffs' request for a lodestar enhancement of $46,250.00.  Plaintiffs request this enhancement because they spent a nearly 100 hours investigating and familiarizing themselves with GINA and the intersection of the law and genetics, but did not bill or record this time.  (Pls.' Motion, Doc. 142-1 at 33-34.)

As discussed above, the lodestar amount of reasonable hours expended multiplied by a reasonable hourly rate is presumed to result in an appropriate fee award.  The Court must therefore justify any upward or downward departure from that amount.

An upward adjustment of the lodestar fee is only warranted in those "rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554.  A party seeking such an enhancement must offer "specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *Id.* Tellingly, the Supreme Court has "never sustained an enhancement of a lodestar amount for [attorney] performance." *Id.* at 552.

Plaintiffs argue that the lodestar figure in this case does not fully reflect the time spent on the case or its "novelty and complexity," because counsel elected not to bill their clients for all of the time spent learning about "GINA and its importance."  (Doc. 142-1 at 35.)  Plaintiffs offer an estimate of one-hundred hours – on top of the several dozen hours of research that they did bill – as a ballpark figure for the amount of time they spent on this matter they did not bill for.

The Court rejects Plaintiffs' request for an enhancement. The Supreme Court has specifically remarked that the "novelty and complexity" of a case are usually *not* grounds for an enhancement because these factors are subsumed in the lodestar analysis.  *Perdue*, 559 U.S. at 553.  Plaintiffs offer no compelling reason to ignore that guidance.

Specifically, Plaintiffs offer no authority where an attorney obtained a lodestar enhancement after she decided "as a matter of billing judgment, not to record or charge [her] clients for [some amount of] time."  (Pls.' Reply at 142-1.) If Plaintiffs' counsel wanted to try to recover fees for this time, they should have recorded it.  The purpose of requiring attorneys to submit "detailed" timekeeping records is to allow a court to ascertain whether or not the hours spent were reasonable.   It would defeat that purpose to award an attorney a lodestar enhancement based on that attorney's best guess of time she spent on a matter but did not record.  A court would simply be taking that attorney's word that the time spent was necessary and reasonable, without any way to review those

assertions.  This would be inconsistent with the Supreme Court's directive that an award of a lodestar enhancement must be "objective and capable of being reviewed on appeal."  *Perdue*, 559 U.S. at 543.

Moreover, as described below, the Court is reducing Plaintiffs' fee award because it finds the overall time expended to be somewhat excessive.  It would make little sense to reduce Plaintiffs' overall fee reward for reasonableness purposes, but then tack on a lodestar enhancement based on *additional* unbilled hours.

Finally, the issues presented by the case were relatively straightforward, even if they arose in a new context that involved its own unique challenges.  The Court therefore finds that its ultimate fee award does reflect the degree of complexity of this matter.

### B.  Reasonableness of the Fee Request

The Court next addresses the overall reasonableness of Plaintiffs' fee request for $522,815.33.[1]

The following chart is adopted from a chart provided by Plaintiffs.  It demonstrates the breakdown of the fees, separated by time period and nature of activity:[2]

---

[1] As discussed herein, this number is reached by taking Plaintiffs' overall fee request of $600,597.04 and subtracting the requested lodestar enhancement of $46,250.00 and then subtracting the requested litigation expenses.

[2] The Court has adjusted this breakdown and table in light of the Plaintiffs' reductions of some fee request subcategories and has included Plaintiffs' supplemental fee request for those fees incurred in filing a Reply in support of its Motion and in responding to Defendant's Motion for a

| Category | Hours | Fees | Cumulative Fees |
|---|---|---|---|
| Prelitigation and Investigation and Research, EEOC Filing and Litigation Pleading (11/7/12 − 7/20/13) | 105.10 | $38,682.50 | $38,682.50 |
| Pre-service, Joint Preliminary Planning Period and Discovery, Including Expert Discovery (7/21/13 − 8/31/14) | 409.00 | $126,145.00 | $164,827.50 |
| Post-discovery through submission of summary judgment motions (9/1/14-12/12/14) | 124.30 | $38,157.50 | $202,985.00 |
| Awaiting Order on Summary Judgment | 7.10 | $1,457.50 | $204,442.50 |
| Mediation, Pretrial and Trial Prep through Offer of Judgment (5/5/15 − 5/29/15) | 131.39[3] | $47,503.75 | $251,946.25 |
| Pretrial and Trial Prep After Offer of Judgment (5/30/15 − 6/16/15) | 476.08 | $149,189.58 | $401,135.83 |
| Trial (6/17/15 − 6/22/15) | 225.45 | $64,088.75 | $465,224.58 |

New Trial.  This table also does not included Plaintiffs' request for a lodestar enhancement, which the Court rejected.

[3] Based on the Court's reading of the time entries for this period, Plaintiffs' counsel spent at least 50 hours on mediation − and maybe more than 60 − and the rest on trial preparations.

| Post-Trial (6/23/15 – 11/2/15) | 140.40 | $46,217.50 | $511,442.08 |
|---|---|---|---|
| Supplemental Fee Request (11/03/15 – 12/22/15) | 53.75 | $17,751.25 | $529,193.33 |
| Less fees withdrawn | n/a | ($6,378.00) | $522,815.33 |
| Totals | 1,672.57 hours | n/a | $522,815.33 |

As discussed above, the first step in determining a reasonable fee is arriving at the lodestar amount, by multiplying a reasonable hourly rate by the reasonable number of hours expended.

Here, Defendants mostly do not contest that Plaintiffs' counsel charged a reasonable hourly rate.[4]  And after reviewing Plaintiffs' counsels' hourly rates, the Court finds those rates to be reasonable.   Lead counsel for Plaintiffs is an experienced trial lawyer with nearly twenty years of employment litigation experience.  $450 per hour is a reasonable hourly rate for such an individual in the Atlanta legal market.  Plaintiffs' second chair at trial bills at a reasonable $350 per hour.  He has nearly a decade of experience, again focused in the area of civil rights and employment litigation.  (Decl. of Benjamin Stark, Doc. 142-8 at ¶ 4.)  The hourly rates charged by the remaining attorneys on this matter are also

---

[4] Atlas does object that Plaintiffs should not have billed $400 per hour for an outside attorney, Lisa Lambert, who drafted evidentiary motions.  The Court disagrees that such work necessarily should have gone to a lower-billing associate, as such motions can and did have a large impact on the ultimate result of the case.  And the overall expense of Ms. Lambert's billing time was $15,120.00, which is not unreasonable given the work she performed.

reasonable.[5]  *Moore ex rel. Moore v. Cook*, No. 07-cv-631-TWT, 2012 WL 5362892, at *4 (N.D. Ga. Oct. 31, 2012) (awarding $475/hour for attorney with 23 years experience, $400/hour for attorney with 26 years of experience, and $330/hour for attorney with 10 years of experience).

Plaintiffs also provide a healthy amount of evidence supporting their assertion that the hours expended on this matter were reasonable.  Included in this evidence is the affidavit of A. Lee Parks, a respected Atlanta-area litigator and the president of Parks, Chesin, & Walbert, P.C.  Mr. Parks affirms that he "reviewed the itemized statement of all the time and expenses incurred" and found that it "fairly describes the services rendered to the plaintiffs," and "reflect[s] conscientious and diligent representation in the face of a[n] [aggressive] litigation strategy."  (Declaration of A. Lee Parks, Doc. 142-11 at 7.) And Plaintiffs attach the Declaration of Brett Bartlett, the chair of Seyfarth Shaw LLP's Atlanta, Georgia Labor & Employment Department.  Mr. Bartlett almost exclusively devotes his practice "to defending employers in FLSA litigation." (Doc. 142-15 at 2.)  He also attests that "the fees that Plaintiff[s] seek[] for having prevailed in this case are reasonable."  (Doc. 142-15 at 4.)  Finally, Lisa Strauss, a partner at Bondurant, Mixson & Elmore, attests that the rates charged by the attorneys and paralegals in this matter are reasonable.  (Doc. 142-12 at 3-4.)[6]

---

[5] Atlas also contests that Plaintiffs should have charged their historical rates for hours billed in 2014, 2013, and 2012.  This contention is considered (and rejected) below.

[6] Plaintiffs attach other declarations from outside counsel that also support their fee petition. (*E.g.*, Decl. J. Stephen Mixon, Doc. 142-13; Decl. T. Robert Reid, Doc. 142-14.)

The Court takes note of the fact that Plaintiffs have submitted affidavits supporting their fee request from both defense and plaintiff's attorneys who practice in the area of employment litigation.

Nonetheless, after thoroughly reviewing all of the billing records and evidence provided, the Court concludes that the amount of time spent on this matter is somewhat excessive. The Court therefore imposes an across-the-board reduction of 7.5 percent of the total hours logged by each attorney and paralegal. This is equivalent to a reduction of roughly 125 hours (7.5 percent of 1,672.57 hours equals 125.44 hours).

In reaching this determination, the Court relies on its own experience and its thorough review of the documents filed in support of and opposing the fee petition. *Norman*, 836 F.2d at 1303 ("where the time or fees claimed seem expanded . . . the court may make the award on its own experience.")  The Court focuses on "the hours claimed [weighed] against [her] own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717.

In particular, the Court finds that Plaintiffs' hours spent during the discovery period are somewhat high given the nature of discovery in this case, the low number of depositions, and the limited number of documents at issue. Plaintiffs have also failed to eliminate some inconsistencies in how they bill certain entries that seem administrative in nature.  And Plaintiffs' research hours

were a bit excessive.  All of these billing issues are modest, but they do warrant some reduction.  The Court addresses each of these issues in more detail below.

Thus, the Court will award Plaintiffs $483,604.18 in fees and $31,531.71 in reasonable litigation expenses.   The Court reaches the fee result in the following manner:

- Plaintiffs' total fee and expense request of $600,597.04 minus the requested lodestar enhancement of $46,250.00 minus the requested expenses of $31,531,71 = $522,815.33 in requested fees for hours actually logged.

- $522,815.33 minus $39,211.15 (7.5 percent of $522,815.33) due to somewhat excessive and duplicative hours = a lodestar amount of $483,604.18.

*See Wrap It Up, Inc.*, 548 F.3d at 1350-51 (noting that the Eleventh Circuit endorses "across-the-board" cuts of excessive hours if the billing records are voluminous); *see also Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that a "district court can impose a small reduction, no greater than 10 percent . . . based on its exercise of discretion and without a more specific explanation").

### C.  Defendant's Contentions

The Court next turns to Atlas's specific contentions that the fees sought are unreasonable.  In doing so, the Court addresses its reasons for finding that a modest reduction of fees is warranted.

12

### 1. Discovery-related Fees

The Court first finds discovery-related fees in this matter are high. Plaintiffs spent 409 hours of attorney time during the discovery period. But there were only, by the Court's count, roughly half a dozen depositions taken. The Court also has no indication or evidence suggesting that the document production or review in this case was particularly intensive. This is simply too much time for a case that did not present any extreme or significant discovery demands and where there were a limited number of depositions.

### 2. Fees for "Abandoned Claims"

Atlas argues that Plaintiffs should have their fee award reduced by $132,374.65 because they abandoned their GINA claims for "requiring genetic information" and "disclosure of genetic information," and only prevailed on their claim that Atlas illegally requested or acquired genetic information. (Doc. 152 at 6.)

While a Court may reduce a fee downward when a Plaintiff fails to prevail on some of his claims, that is generally only appropriate if the unsuccessful claims are "unrelated to the claims on which he succeeded." *Hensley v. Eckerhart*, 461 U.S. 424, 434-45 (1983). Claims are unrelated if they are "based on different facts and [different] legal theories." Conversely, they are related if they share "a common core of facts" or are "based on related legal theories." *Id.* at 435; *see also Yule v. Jones*, 766 F. Supp. 2d 1333, 1347-49 (N.D. Ga. 2010) (awarding roughly $1.8 million in attorney's fees after six years of litigation in an

employment discrimination case where plaintiffs alleged a "central unified theory" of discrimination); *Davenport v. City of Columbus, Ga.*, No. 06-cv-150-CDL, 2009 WL 235253, at *8 (M.D. Ga. Jan. 30, 2009) (reducing lodestar amount and excluding from fee award some unsuccessful employment and first amendment claims, but finding race discrimination, gender discrimination, and hostile work environment claims shared a common factual core). As the Supreme Court acknowledged in *Hensley,* "[i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency." 461 U.S. at 435. And so the Court admonished that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" that "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*

Here, Plaintiffs' "acquisition" and "disclosure" claims cannot be untangled from each other: they share the same factual roots. In the Complaint, both claims were founded on Atlas's "comparison of Lowe's and Reynolds's DNA to the fecal DNA found in the warehouse," which it accomplished by obtaining DNA from Plaintiffs and sending it to a testing lab. (Order on Summary Judgment, Doc. 62 at 10.) And although Plaintiffs eventually abandoned the claim that Atlas violated GINA through its "disclosure" of the genetic information to a "third-party lab company for testing," (Compl. ¶ 33) the *fact* of disclosure to the lab wound up being an essential component of the acquisition claim upon which Plaintiffs prevailed. Specifically, the Court found that Atlas violated GINA

because it requested (or "acquired") genetic information from Plaintiffs when it requested the genetic test carried out by Speck Forensic Laboratories ("Speck"). (Order on Summary Judgment, Doc. 62 at 9-10.)  Atlas *disclosed* Plaintiffs' DNA "by submitting [it] to [Speck]," which allowed Atlas to *acquire* genetic information by "requesting [Speck] analyze the [genetic] sample."  (Compl. ¶¶ 27, 33.)

More, the disclosure claim was also closely tied to Plaintiffs' damages theory, which partially focused on the legitimate grounds for Plaintiffs' fear that their genetic samples would be misused by Speck or others.  The Court found that fear was supported "by the testimony of Professor Paul Lombardo" and "evidence that, for years, Plaintiffs were not told whether their genetic material was destroyed" by Atlas or the lab.  (Memorandum Order, Doc. 118 at 6.)  Finally, Defendant also asserts that Plaintiffs abandoned a claim alleging that Atlas "required" genetic information.  While that phrase appears in the Complaint, Plaintiffs alleged only two counts: their acquisition count, and their disclosure count.  Defendant thus argues that Plaintiffs abandoned a claim that never existed in the first place.  In sum, these claims proceeded under the same statute and were concerned with the same facts.  Thus no further reduction is warranted for Plaintiffs' "abandonment" of the GINA disclosure claim.

### 3.  Administrative or Clerical Tasks

Atlas next contends that Plaintiffs wrongly billed attorney's fees for tasks that are administrative and clerical in nature.  Most of this dispute centers on

Plaintiffs' billing of paralegal time.   Billing for paralegal time is a perfectly legitimate practice so long as the work can be characterized as "legal work, in the strict sense." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Many of the tasks billed here that are challenged by Defendant are obviously not administrative and can be fairly characterized as legal. For example, the paralegals spent a significant amount of time at trial, where they "handled trial technology." (Decl. of Amanda A. Farahany, Doc. 158-1 at ¶ 14; Pls.' Reply, Doc. 158 at 18); *see Cefalu v. Village of Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000) (permitting reimbursement for trial technology expenses, including multimedia presentations).[7]

But Plaintiffs did voluntarily remove certain billing entries in their Reply because they were "administrative," while allowing other entries with almost the exact same descriptions to remain.  For example, Plaintiffs removed at least one request for a billing entry described as "Review electronic filing," and "Review documents filed with Court" (Doc. 158-2), but allowed other entries like "Review documents filed with Court" to remain.   (Doc. 152-1 at 19.)   And Plaintiffs contend that their paralegals created databases for the facts and documents of this case, and that this work was essential. But they then voluntarily removed some of this work in their updated fee request because it was "Administrative/Clerical."   (Doc. 158-2 at 1-2.)   The Court is hard pressed to

---

[7] The Court notes that trial technology costs are usually billed as that: costs.  But here, when the work is kept in-house, it seems appropriate to bill it as attorney's fees.

allow Plaintiffs to charge for some database work but not charge for other work with the same billing description when there is no indication of any difference between the respective timekeeping entries.

In addition, Plaintiffs' paralegals charged for "time entries for court e-mails generated by the CM/ECF system" that "denote[d] that the person creating the entry reviewed the filing in order to determine what obligations and deadlines such filing creates for our firm."  (Doc. 158-1)  This might be all well and good, but Plaintiffs also voluntarily removed entries for "manag[ing] case deadlines" (Doc. 158-2 at 3) and "verify[ing] case deadlines."  (Doc. 158-2 at 2.)  As Plaintiffs acknowledge, courts have found that "calendaring deadlines" is an administrative task that cannot be billed for.  (Pls' Reply at 15.)  These entries should therefore have been withdrawn.  All in all, a somewhat sizeable number of entries concern tasks that appear administrative or are identical to entries for which Plaintiffs withdrew their fee requests.  The Court therefore finds the paralegal hours billed are somewhat excessive, which is taken into account in its overall lodestar determination.

### 4.  Time Devoted to Conferencing or Redundant Tasks

Atlas also seeks to eliminate $34,720.00 in fees it describes as "devoted to conferencing or redundant tasks."  Many of these billing entries concern internal meetings or calls held by Plaintiffs' attorneys.  Atlas seems to suggest that attorneys should work in a fortress of solitude, single-mindedly pursuing a case strategy and drafting pleadings without any input from their colleagues.

Back here on Earth, attorneys regularly consult and strategize with each other in order to develop their case, edit each others' writing, share and discuss the results of their research, and engage in other basic tasks of workplace interaction aimed at putting forward the best product possible. *See Gowen Oil Co., Inc. v. Abraham*, 511 Fed. Appx. 930, 936 (11th Cir. 2013) (district court did not abuse its discretion in awarding fees for meetings attended by multiple attorneys); *Eason v. Bridgewater & Associates, Inc.*, 108 F. Supp. 3d 1358, 1364-65 (N.D. Ga. 2015) ("[w]here multiple attorneys are involved in a case, there must be some coordination among them, and more senior attorneys must have the ability to review and revise the work of more junior attorneys") (finding that time spent by multiple attorneys in meetings was not unreasonable).

That being said, the Court is skeptical that nine separate attorneys were truly necessary for this case. *See Sklar v. Clough*, No. 06-cv-627-JOF, 2008 WL 5381961 at *2 (N.D. Ga. Dec. 23, 2008) ("there were more lawyers involved in this case on Plaintiffs' side than are necessary for this type of litigation and . . . consequently the amount of conferencing, strategy sessions, and e-mail exchanges [became] excessive") (imposing a fifteen percent reduction in fees for overstaffing). The Court acknowledges that three attorneys did 94 percent of the billing – which lessens the impact of this fact – but the Court finds it inevitable – and reflected in the timekeeping records – that staffing of this nature leads to some duplication of work.

And there are entries that are clearly administrative.  For instance, some entries objected to by Atlas seek to bill for tasks like "[d]iscussing deposition logistics" and calling opposing counsel for payment related to a deposition.  (Doc. 142-3 at 18.)   These must be reduced.   Thus the Court finds that a modest reduction is warranted for the billing entries challenged by Atlas as "devoted to conferencing or redundant tasks," which the Court takes into account in its overall lodestar determination.

### 5.  Insufficient Detail to Support the Request

Atlas also argues that 242.7 hours totaling $67,010 in fees are insufficiently detailed to support an award of attorney's fees.

Plaintiffs sought fees for hours billed spent drafting and responding to a large number of e-mails.  Initially, for a significant chunk of those e-mails, the subject matter descriptions were entirely lacking.  For example, Plaintiffs first sought fees for e-mails described as "E-mail: From Rachel H. Smith To: Benjamin Stark CC: S."  (Doc. 142-3 at 2.)   Those timekeeping entries provided no indication to the Court that the subject matter of these communications was appropriate for billing (or for billing at the rate sought, if the e-mails could have been handled by a paralegal).  However, Plaintiffs have largely corrected this problem by providing a supplement to their Reply that (1) withdrew requests for

nearly 150 duplicate e-mail entries and (2) provided additional subject matter information for roughly another 100 such e-mails. (Docs. 158-4, 158-5.)[8]

Atlas also challenges some entries that could fairly be characterized as generic - but which are obviously concerned with billable tasks like "trial preparation." While a more detailed description than mere "trial preparation" might be helpful, it is not required. *See Crouch v. Western Exp., Inc.*, No. -, 2014 WL 1218855 at *2-3 (M.D. Tenn. March 24, 2014) (description of billing entry as "trial preparation was "sufficient given the work performed" as "counsel is not required to provide more specific details listing subcategories of trial preparation.")

Other challenged entries are also obviously sufficient: they describe the work done and the subject matter in a way that allows the Court – and should have allowed Atlas – to ascertain the reasonableness of the fee. For example, billing entries for e-mails that describe the correspondence as concerning "[e]xcluding [an expert witness] and Legislative History" are patently adequate. The same reasoning applies to "legal research" entries that describe the nature of the research (like those indicating research on damages).

At the end of the day, there are still some number of entries that lack an adequate description and therefore do not allow the Court to determine whether

---

[8] Atlas also initially sought to exclude obviously adequate e-mail entries. For example, Atlas seeks to exclude entries described as "Email: Re: Lowe/Reynolds v. Atlas – damages research" (Doc. 152-3 at 5), "Email: Re: Consolidated DRAFT PTO 6-2-15" (obviously referring to the pretrial order), "Email: Re: Lowe/Reynolds v. Atlas – motions in limine," and "Email: Analysis of Lowe MIL re: Excluding Lombardo and Legislative History." The Court finds these descriptions sufficient.

or not the associated fees were "reasonably" incurred.  But most of those entries concern e-mails for which a miniscule amount of time was spent.  Thus while there is a basis for reducing the lodestar amount based on inadequate descriptions in billing entries, a large reduction is not warranted.  This is taken into account in the Court's overall lodestar determination.

### 6.  Time Devoted to Unnecessary Mock Trial or Focus Group

Atlas next seeks to exclude fees that Plaintiffs incurred when they convened a focus group to help them prepare for trial.  "Courts refuse to draw a firm line concerning the reasonableness of attorney fees for mock trials, moot courts, and other trial preparation techniques, instead analyzing the reasonableness in the context of the particular cases."  *Lemus v. Timberland Apartments, LLC*, 876 F. Supp. 2d 1169, 1180 (D. Ore. 2012) (allowing for fees for mock oral arguments) (citing *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F. 2d 403, 407 (9th Cir. 1990) (allowing fees for a single moot court); *see also Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (district court acted within its discretion in permitting fees for mock trial); *Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 804 (8th Cir. 2015) (same) (applying Nebraska law).  Here, the Court finds that use of a focus group was reasonable given the potential difficulty of explaining to a jury the overall legal context of the violation at issue and its significance.  In addition, the roughly 24 hours spent preparing for and conducting the focus group is reasonable.

### 7.  Time Entries Related to Expert Paul Lombardo

Atlas next contends that the fees spent on retaining and consulting expert witness Professor Paul Lombardo should be reduced by 75 percent because "only a small portion of his opinion (approximately 25 percent) was ultimately deemed relevant by the Court."  (Def.'s Resp., Doc. 152 at 8.)  Plaintiffs counter that the "core of Professor Lombardo's testimony was admitted," which was to explain "that GINA was created to counteract the very fear that Plaintiffs experienced, fear of the abuse of their genetic information."  (Pls.' Reply, Doc. 158 at 19.)  The Court acknowledged the import of Professor Lombardo's testimony in its Memorandum Order memorializing some of its trial rulings.  (Doc. 118 at 6.)

A portion of Professor Lombardo's report was focused on issues (like the history of eugenics in America) that the Court ultimately prevented him from testifying about.  (Expert Report of Paul A. Lombardo, Doc. 70.)  And other courts have prevented litigants from recovering fees associated with experts whose testimony was not admitted.  *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03-cv-1548, 2008 WL 4613752, at *13-14 (S.D.N.Y. Oct. 17, 2008).  But Defendant has provided no authority for the proposition that the Court should reduce fees related to an expert when the core of that expert's testimony made it in front of a jury.  Nor has Defendant sought to justify its proposed 75 percent fee reduction other than by alluding to the fact that a fair bit of his pre-trial report was dedicated to the history of eugenics and other issues he did not testify to.  The main purpose of Professor Lombardo's testimony was to help the jury

understand the nature of the claims in this lawsuit, some of the historical and legal context surrounding GINA, and the concerns that typically surround the disclosure of genetic information – all of which could have informed the jury's damages award. This is precisely what he testified about.   Finally, the total amount of attorney time spent on Professor Lombardo's report – less than 14 hours – is reasonable under the circumstances.   The Court finds no basis to reduce Plaintiffs' fees based on this argument.

### 8.  Excessive GINA Research

Atlas also argues that $31,520.00 in legal research fees are excessive because there was "no legal precedent on point" concerning GINA.   (Def.'s Resp. at 9.) Defendants suggest that because there is no *case law* about GINA, Plaintiffs should have abandoned their GINA research after a few hours and charged roughly $1,500.00.  (*Id.* at 8-9.)

First, many of the billing entries concern research about genetic testing in general, not GINA in particular.  (*See* Doc. 152-6 ("Research Autosomal DNA Testing.")   This kind of background research is perfectly acceptable.   Another significant chunk of billing entries concern researching how to prove damages under GINA – which, again, is acceptable.  (*See* Doc. 152-6 at 2 (billing entry for "Jury research on liability and damages").)   And, as Plaintiffs note, the Parties fought hard about the purposes of GINA, its text, and its legislative history – all areas of contention that required legal research, even if they didn't require *case* research.   The Court finds it reasonable that Plaintiffs would expend a fair

amount of time researching the background of a relatively new statute, the underlying subject matter of genetic testing, and how to prove damages under the special circumstances of this case – especially when a defendant hotly contests liability.  That being said, the Court finds that the total amount of 74.1 hours is somewhat high, and takes this into account in its total lodestar determination.

### 9.  Plaintiffs May Recover Fees at their Current Hourly Rate

Atlas also contends that Plaintiffs counsel should not be compensated at their current hourly rates.  The Court disagrees.  As the Supreme Court recently noted, "[a]n attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all . . . [c]ompensation for this delay is generally made 'either by basing the ward on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (citing *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)); *see also Hunter v. Cook*, No. 08-cv-2930, 2015 WL 4940900, at *3 (N.D. Ga. Aug. 19, 2015) ("The Defendant misses the point completely.  The law is clear that the attorneys for the prevailing parties are entitled to be paid their current hourly rate to compensate for the delay in being paid.")

Plaintiffs took this case in late 2012, and litigated it for approximately three years.  Other Courts have found that a similar delay warrants awarding fees at current rates.  *See, e.g.*, *Gates v. Deukmejian*, 987 F. 2d 1392, 1407 (9th Cir. 1992) (awarding fees at current rates when "Plaintiffs' attorneys have waited over

three years to be compensated"); *Eason*, 108 F. Supp. 3d at 1365 (finding that it was reasonable for plaintiff's lawyers in employment discrimination case to use 2014 rates for litigation during the years 2011 through 2015). The Court finds that here, too, awarding fees at the current rates is appropriate in light of the delay of payment. The Court also notes that counsel's requested hourly rates would not have been excessive even in 2013.

### 10. "Failing to Settle"

Atlas also contends that Plaintiffs' fees should be reduced by 50 percent because Plaintiffs were allegedly hell-bent on bringing this case to judgment. There may be circumstances where a party unreasonably makes grossly excessive settlement demands with the intent of prolonging the litigation for the purposes of racking up expenses and thus is not entitled to its full award of fees. *See Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir. 1982) (denying fees to plaintiff's counsel in FLSA case due to unreasonable settlement demands). Those circumstances are not present here.

The record shows that Plaintiffs offered to settle the case at the outset of litigation for $200,000.00 – or one-third of the amount eventually won at trial (exclusive of fees). In addition, Plaintiffs made a pre-trial offer of $500,000.00, inclusive of fees - $100,000.00 less than the damages awarded at trial. (Doc. 158-1 ¶ 11.) Atlas's contention that Plaintiffs *refused* to engage in meaningful settlement discussions beggars belief when Plaintiffs made two pretrial offers that included fees for less than the $600,000 they ultimately won on damages

alone.  Plaintiffs' counsel apparently valued their case correctly.  The Court will not punish them for Atlas's failure to do the same.

Atlas also makes gestures towards arguing that because this suit was against a private defendant and allegedly benefits only "two Plaintiffs" that a reduction in fees of "at least 50%" is warranted.  (Def.'s Resp., Doc. 152 at 13-14.)  Atlas cites no legal authority for this proposition other than a handful of cases that note that fees are especially appropriate in suits against public officials or entities that vindicate important rights.  Nothing about those cases suggest that fee *reductions* are appropriate just because a suit is against a private party.  Moreover, this litigation in fact did address an issue of public importance and was reported in the news media as such.

### D.  Expenses of Litigation

Plaintiffs also request $31,531.71 in expenses.   Plaintiffs seek litigation expenses under 42 U.S.C. § 1988, not under 29 U.S.C. § 1920.  Atlas objects on four primary grounds.

First Atlas objects that $2,412.72 in LexisNexis costs should be excluded.  Plaintiffs direct the Court to *Evans v. Books-a-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014).  There, the Eleventh Circuit held that "legal research" expenses are recoverable under § 1988 if it is the prevailing practice in the local legal community to separately bill clients for those services.   *Id.*   The Court's experience in this District strongly suggests that it is the practice of the local legal community to bill clients separately for legal research costs.  Further, $2,412.72 is

a reasonable sum for computer research for a three-year old case.  The Court will therefore award Plaintiffs their research costs.  *See id.* at 1299 n.8 (collecting circuit cases finding that research costs may be borne by the losing party).

Second, Atlas asserts that $968.80 in mock trial costs should be excluded. As discussed above, the Court finds the fees associated with the mock trial reasonable and necessary.  As these fees are sought pursuant to § 1988, they are appropriate. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (affirming fee award of $684,506 in fees and costs on top of a $300,000 jury verdict) ("the district court acted within its discretion in finding that Waldo's requested costs for focus groups, mock trials, jury-selection services, and mediation were reasonable and necessary to provide Waldo with effective representation.")  Atlas cited only one case directly concerning this issue: a 7th Circuit decision that affirmed an award of over $100,000 in fees to a plaintiff who won a $2,000 verdict.  *Montanez v. Simon*, 755 F.3d 547, 557 (7th Cir.), *cert. denied sub nom. Montanez v. Chicago Police Officers FICO*, 135 S. Ct. 459, 190 L. Ed. 2d 332 (2014).  There, the fees (including mock trial fees) were reduced because the case was "over-litigated" to a degree plainly not present here – and the district court still awarded fees of over 50 times the jury verdict.  *Id.*

Third, Defendant seeks to deduct $8,913.59 in trial and deposition transcripts and non-expert witness fees.  Plaintiffs concede that much of this amount is properly excluded because Plaintiffs already requested some

transcripts in their bill of costs.  (*See* Reply, Doc. 158 at 25.)  Plaintiffs therefore voluntarily reduced their requested costs by over $6,000.00 in their Reply brief.

However, Plaintiffs still request an award of costs for the trial transcript. Plaintiffs do not respond at all to Defendant's argument that Plaintiffs should have requested trial transcript fees in their bill of costs pursuant to 29 U.S.C. § 1920.  Nonetheless, these costs appear to be recoverable under § 1988.  *See Barnes v. Zaccari,* No. 7:12-CV-89 HL, 2013 WL 3864306, at *29 (M.D. Ga. July 24, 2013), *rev'd in part, vacated in part on other grounds,* 592 F. App'x 859 (11th Cir. 2015) ("The Court finds no reason that these [transcript] costs cannot be recovered under § 1988 instead of § 1920, so long as there is no attempt at double recovery"); *Summers v. Adams*, No. CA3:08-2265-CMC, 2010 WL 2179571, at *5 (D.S.C. May 26, 2010) (permitting recovery of transcript costs under § 1988); *but see Cleavenger v. Univ. of Oregon*, No. CV 13-1908-DOC, 2016 WL 1065821, at *14 (D. Or. Mar. 16, 2016) ("the Court's research indicates courts in this District do not award the costs of daily trial transcripts under § 1988; instead, these costs are awarded under 28 U.S.C. § 1920 or not at all.")  The Court will therefore award Plaintiffs the costs of the trial transcript.

Finally, Atlas seeks to reduce Professor Lombardo's expert witness fee by $14,771.25, a 75 percent reduction, for the same reasons it requested a reduction in attorney's fees related to preparing his testimony.  (Doc. 152 at 17.)  Atlas does not argue that expert fees cannot be awarded – only that fees related to Professor Lombardo should be reduced because "[o]nly a small portion of his opinion

(approximately 25 percent) was ultimately deemed relevant by the Court." (Response, Doc. 152 at 8.)   Atlas ultimately devotes less than a page of its Response to arguing that costs and fees related to Professor Lombardo should be slashed by 75 percent.

For the reasons discussed above in this Order, the Court (and apparently the jury) found Professor Lombardo's testimony relevant and helpful.   And $19,695.00 in expert witness fees is not an unreasonable amount in a case that resulted in a $600,000.00 verdict.   Notably, Defendants only argued that Professor Lombardo's fees should be reduced because some of his testimony was not admitted, not because he charged an unreasonable rate or spent an unreasonable amount of time on his report or preparing to testify. The Court therefore awards Plaintiffs their costs associated with Professor Lombardo pursuant to GINA and § 1988(c).

The Court will therefore award $31,531.71 in expenses to Plaintiffs.

## III. Conclusion

For the foregoing reasons, the Court awards Plaintiffs $483,604.18 in fees and $31,531.71 in expenses, for a total of $515,135.89.

**IT IS SO ORDERED** this 18th day of May, 2016.

Amy Totenberg
United States District Judge